UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

KHALED MOHAMED,

                    Plaintiff,

        - against -

SANOFI-AVENTIS PHARMACEUTICALS; SANOFI-AVENTIS U.S. INC.; SANOFI-SYNTHELABO GROUP SEPARATION PAY PLAN; and SANOFI-SYNTHELABO SEPARATION PAY PLAN COMMITTEE,

                    Defendant.

-----------------------------------------------------------x

06 Civ. 1504 (BSJ) (DFE)

FIRST AMENDED COMPLAINT

ECF CASE

RECEIVED
MAY 23 2006
U.S.D.C. S.D. N.Y.
CASHIERS

      Plaintiff Khaled Mohamed ("Mohamed" or "plaintiff") through his attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., complains of defendants Sanofi-Aventis Pharmaceuticals, sanofi-aventis U.S. Inc. (collectively "Sanofi"), Sanofi-Synthelabo Group Separation Pay Plan (the "Plan") and Sanofi-Synthelabo Separation Pay Plan Committee (the "Committee") (collectively "defendants") as follows:

## NATURE OF ACTION

      1.    This action is brought pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") to obtain various employee benefits that have been denied to plaintiff, and for discrimination and retaliation against plaintiff for his attempt to exercise his right to benefits.

      2.    Plaintiff seeks injunctive relief, declaratory relief, the benefits denied, attorneys' fees, costs, interest, statutory penalties, and other appropriate relief pursuant to ERISA.

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

3. As defendant Sanofi resides or may be found within the Southern District of New York, venue is proper within this district pursuant to 28 U.S.C. § 1391(b) and (c) and 29 U.S.C. § 1132 (e)(2).

4. Plaintiff has exhausted the administrative claims procedures for obtaining benefits.

## PARTIES

5. Mohamed was employed by Sanofi and its predecessors from July 1997 until he was fired on or about January 27, 2005, as set forth below, in New York, New York.

6. Sanofi is a Delaware corporation and subsidiary of Sanofi-aventis, based in France. Defendants' counsel has represented that "sanofi-aventis U.S. Inc." is the new name of the subsidiary Sanofi-Aventis Pharmaceuticals. Sanofi is engaged in the research, development, manufacture and marketing of pharmaceutical products. Sanofi has an office in New York, New York. Sanofi is a plan administrator, sponsor and fiduciary within the meaning of ERISA.

7. The Plan is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1).

8. The Committee is described in paragraph 16 of the complaint. It is a plan administrator with respect to the Plan within the meaning of 29 U.S.C. § 1002(16)(A).

FACTUAL ALLEGATIONS

9. In July 1997, Mohamed was hired by Sanofi's predecessor, Sanofi Pharmaceutical, Inc., as a Network Technologist in the Network Technology department. Over the years, Mohamed received successive promotions, with increasing responsibilities for management of Sanofi's computer network in North America.

10. Plaintiff's duties included planning and development of communications architecture; dealing with vendors and ordering equipment; installation, configuration and maintenance of hardware and software; project management; and security and disaster recovery processes.

11. Mohamed received consistently positive performance evaluations and praise from Sanofi management, who noted his high ethical standards.

12. Sanofi Pharmaceutical, Inc. changed its name to Sanofi-Synthelabo in 1999, when it merged with the French pharmaceutical company Synthelabo. In or about August 2004, Sanofi-Synthelabo merged with the French pharmaceutical company Aventis, and changed its name to sanofi-aventis.

13. In or about December 2003, Mohamed was promoted to Associate Director of Network Data Communications Services in Sanofi's Technology and Information Services department. He remained in the position until his employment was terminated.

14. On or about September 15, 2005, defendants adopted an amended severance plan (the Plan), effective through June 30, 2005. Under Sections 1 and 11 of the Plan, the Plan is intended to be an "employee welfare benefit plan" within the meaning of ERISA.

15. Under Section 3 of the Plan, any employee whose employment was involuntarily terminated for reasons including elimination of a job or a reduction in force was

entitled to separation benefits. Under Section 2 of the Plan, any employee discharged for "cause," as defined in the Plan, was ineligible for Plan benefits.

16. Section 10 of the Plan established the Committee to administer the Plan and make decisions regarding eligibility for and payment of severance benefits under the Plan. On information and belief, the Committee is composed of Sanofi employees.

17. By letter dated December 17, 2004, David Lillback, Senior Vice President of Human Resources, wrote to Mohamed (the "Lillback Letter"). The Lillback Letter stated that plaintiff's employment with Sanofi would be terminated by February 15, 2005 due to a permanent workplace reduction at Sanofi's headquarters facility at 90 Park Avenue, New York, New York.

18. The job termination described in the Lillback Letter entitled Mohamed to rights provided in the Plan, including the "reduction in force" provision of Section 2.

19. Subsequent to the Lillback Letter, Rick Van Akin ("Van Akin"), Sanofi's Senior Director of Technology Services, urged Mohamed to take a lower-level position in New Jersey that, pursuant to the "constructive discharge" provision of Plan Section 2, Mohamed was entitled to decline and obtain Plan benefits. Mohamed declined the position. Van Akin continued to pressure Mohamed to take the position and expressed annoyance that he would not.

20. From on or about December 20, 2004 until on or about January 11, 2005, Mohamed took an approved vacation.

21. On or about January 12, 2005, Mohamed returned to work. Almost immediately, plaintiff's supervisor, Neil Kalan ("Kalan"), Director of Network Services, and Caroline French ("French") of Sanofi's Human Resources department called plaintiff into a meeting. Kalan and French subjected Mohamed to a lengthy, harsh and intimidating interrogation regarding his purchases and orders of equipment and authorization for these. Kalan and French ignored

Mohamed's repeated attempts to explain the validity of purchases, orders and authorizations. Plaintiff asked Kalan and French what he was being accused of; they replied that he was not being accused of anything. When plaintiff asked them how he could defend himself if he did not know what the allegations were, they told him not to worry about defending himself.

22. In the meeting, Kalan and French told plaintiff not to report to work thereafter, effectively suspending him. Kalan and French told Mohamed that Sanofi was investigating him and shortly would contact him.

23. Immediately after the meeting, Kalan and French disabled Mohamed's access to his work e-mail and documents, despite Mohamed informing them that if he were allowed such access he could locate documents relevant to the questions they were asking.

24. During the weeks after plaintiff's suspension, he repeatedly asked Sanofi to provide him with information on the allegations against him and the company's purported investigation. He received no response.

25. On January 27, 2005, Kalan and French telephoned Mohamed. They told him that his employment was terminated, and that he would receive no severance benefits. French and Kalan claimed that Sanofi was firing Mohamed because he had ordered equipment without proper approval. Sanofi followed up with a letter to plaintiff, dated January 27, 2005, stating that his employment was terminated.

26. In a January 27, 2005 e-mail to French, Mohamed again explained the validity of the orders and purchases in question. In a January 28, 2005 e-mail to plaintiff, French stated that Sanofi refused to reconsider plaintiff's firing. French referred plaintiff to Liz Donnelly ("Donnelly"), Vice President for Compensation and Benefits, regarding any claim by plaintiff for Plan benefits.

27. On January 28, 2005, Mohamed e-mailed Donnelly, in her capacity as Plan administrator, and requested separation benefits under the Plan.

28. On February 9, 2005, having received no response from his e-mail to Donnelly, Mohamed by letter to Donnelly requested full benefits under the Plan and a copy of Plan documents.

29. By letter dated March 21, 2005, counsel for plaintiff repeated his request for benefits and Plan documents.

30. By letter dated March 24, 2005, Sanofi provided Mohamed with a copy of the Plan and Summary Plan Description. Defendants supplied the documents more than 30 days after plaintiff's request for them, in violation of ERISA and in disregard of the requirements of the Plan.

31. By letter to plaintiff dated June 9, 2005, Donnelly on behalf of the Committee as plan administrator denied his request for benefits (the "Initial Denial Letter").

32. The Initial Denial Letter was provided to plaintiff more than 90 days after his request for benefits, thereby failing to meet the requirements of ERISA and the language of the Plan.

33. The Initial Denial Letter claimed that Mohamed's request for benefits was denied because he was discharged "for cause." However, the Initial Denial Letter provided no explanation of the purported "cause" that justified Mohamed's firing and thus no specific reasons for the denial. The Initial Denial Letter thereby violated ERISA and the language of the Plan.

34. Mohamed at no time during his employment with Sanofi acted or failed to act in any way that could be construed to meet the definition of "cause" set forth in the Plan. Mohamed was an outstanding performer at Sanofi; performed his duties diligently; violated no company policies, codes or rules; and engaged in no behavior that could support a "cause" firing.

35. The Initial Denial Letter stated that Mohamed was entitled to receive from defendants "all documents, records or other information relevant to [his] claim for benefits." By letter dated July 14, 2005, Mohamed, through counsel, requested from defendants documents and information relevant to his claim for benefits.

36. The Initial Denial Letter stated Mohamed's right to appeal the denial of benefits within 60 days by submitting a written appeal to the Committee.

37. By letter dated August 1, 2005, to Donnelly on behalf of the Committee, Mohamed appealed the initial denial of benefits and requested an explanation or specifics on defendants' rationale for the denial.

38. On September 28, 2005, the Committee issued a second denial letter (the "Second Denial Letter"), which affirmed its denial of Mohamed's claim for severance benefits.

39. The Second Denial Letter provided post hoc rationales for the denial of benefits, and alleged that Mohamed was fired due to his alleged violations of company policies, including some violations which the letter did not disclose.

40. The Second Denial Letter stated that Mohamed could consider the letter a determination on appeal, in response to which Mohamed could bring a civil action pursuant to ERISA.

41. The Second Denial Letter failed to provide any of the documents or information relevant to plaintiff's claim that he had requested, or to explain defendants' refusal to provide the documents and information.

42. By letter to the Committee dated September 30, 2005, Mohamed, through counsel, reiterated his previous request for a full explanation of the rationale behind defendants' denial of benefits, including information on all of the alleged violations of company policy which

Sanofi purportedly investigated and considered in deciding to fire him. Additionally, Mohamed reiterated his request for documents and information relevant to his claim. He received no response.

43. By letter to the Committee dated November 29, 2005, Mohamed, through counsel, repeated his request for documents and information relevant to his claim, including requests for copies of specific policies and codes on which Sanofi purported to rely in firing him. He received no reply.

44. Defendants' refusal to respond to plaintiff's requests for documents and information relevant to his claim disregards plaintiff's procedural rights under ERISA and as provided in the Plan.

45. Defendants denied plaintiff benefits that he was entitled to under the Plan.

46. Defendants terminated plaintiff's employment to prevent him from attaining the benefits to which he would have been entitled under the Plan.

47. On February 24, 2006, plaintiff filed his initial Complaint in this case.

48. On May 1, 2006, defendants filed Defendants' Answer and Affirmative Defenses and Counterclaims of Defendant Sanofi-Aventis U.S. Inc. (the "Counterclaims").

49. The Counterclaims included counterclaims for Breach of Contract, Conversion and Unjust Enrichment.

50. All Counterclaims are based on alleged conduct that Sanofi was aware of prior to January 27, 2005 or shortly thereafter.

51. Prior to filing the Counterclaims, Sanofi had never informed plaintiff of any alleged monies owed to defendant, made any demand for payment or taken any legal action against plaintiff.

52. Sanofi did not make any claim or demand until plaintiff asserted rights under ERISA.

53. The Counterclaims cast plaintiff's professionalism and ethics in a negative light and negatively impact his prospective employment.

## FIRST CLAIM FOR RELIEF

54. Plaintiff repeats and realleges paragraphs 1 through 53 as if fully set forth herein.

55. By the acts and practices described above, defendants have denied plaintiff benefits to which he is entitled, in violation of ERISA.

56. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendants' conduct, unless and until the Court grants relief.

## SECOND CLAIM FOR RELIEF

57. Plaintiff repeats and realleges paragraphs 1 through 56 as if fully set forth herein.

58. By the acts and practices described above, defendants have interfered with plaintiff's protected rights by discriminating against him because he exercised his right to benefits, in violation of ERISA.

59. Plaintiff is now suffering and will continue to suffer irreparable injury as a result of defendants' conduct, unless and until the Court grants relief.

## THIRD CLAIM FOR RELIEF

60. Plaintiff repeats and realleges paragraphs 1 through 59 as if fully set forth herein.

61. In violation of Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1), defendants refused to supply information requested by plaintiff regarding the Plan and his claim for benefits.

62. In accordance with ERISA Section 502(c)(1), defendants are individually liable to plaintiff for payments of up to $100 per day for each day that defendant failed to comply with plaintiff's request for information.

## FOURTH CLAIM FOR RELIEF

63. Plaintiff repeats and realleges paragraphs 1 through 62 as if fully set forth herein.

64. Defendants' counterclaims constitute unlawful retaliation for the filing of plaintiff's Complaint, and for plaintiff opposition to defendants' unlawful interference with his protected rights and discrimination against him because he exercised his right to benefits, in violation of ERISA.

65. Plaintiff is now suffering and will continue to suffer irreparable injury as a result of defendants' conduct, unless and until the Court grants relief.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court enter a judgment:

(a) declaring the acts and practices complained of herein are in violation of ERISA;

(b) directing defendants to make plaintiff whole for all benefits he would have received but for defendants' unlawful conduct;

(c)     directing defendants to make plaintiff whole for unpaid wages through February 15, 2005 that he would have received but for defendants' unlawful conduct;

(d)     awarding plaintiff such interest as is allowed by law;

(e)     imposing penalties for defendants' failure timely to supply plaintiff with requested information and comply with the notice requirements of ERISA;

(f)     awarding plaintiff his reasonable attorneys' fees and costs; and

(g)     granting such other and further relief as this Court deems necessary and proper.

Dated: New York, New York
       May 23, 2006

                                      VLADECK, WALDMAN, ELIAS &
                                      ENGELHARD, P.C.

By:     _____
        Anne L. Clark (AC 6456)
        Attorneys for Plaintiff
        1501 Broadway, Suite 800
        New York, New York  10036
        (212) 403-7300

237150 v1                        11

06 Civ. 1504 (BSJ) (DFE)
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KHALED MOHAMED,

        Plaintiff,

- against -

SANOFI-AVENTIS PHARMACEUTICALS; SANOFI-SYNTHELABO GROUP SEPARATION PAY PLAN; and SANOFI-SYNTHELABO SEPARATION PAY PLAN COMMITTEE,

        Defendants.

---

### FIRST AMENDED COMPLAINT

---

**VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.**

*Attorneys for* Plaintiff

Office and Post Office Address
**1501 BROADWAY
NEW YORK, NY 10036**
(212) 403-7300

---

To

Attorney(s) for

Service of a copy of the within          is hereby admitted.

Dated,          Attorney(s) for

---

Sir: -Please take notice

**NOTICE OF ENTRY**

that the within is a (certified) true copy of a
duly entered in the office of the clerk of the within named court on      19

**NOTICE OF SETTLEMENT**

that an order      of which the within is a true copy will be presented for
settlement to the HON.      one of the judges
of the within named court, at
on the    day of    19    at    M.
Dated,      Yours, etc.

**VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.**

*Attorneys for*
Office and Post Office Address
**1501 BROADWAY
NEW YORK, NY 10036**

To

Attorney(s) for